\]UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

OSCAR MEJIA-ROJO,

      Petitioner,

v.                       Case No:  2:13-cv-9-FtM-38DNF

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

      Respondents.[1]

_____/

## OPINION AND ORDER[2]

This matter comes before the Court upon a petition for habeas corpus relief filed

pursuant to 28 U.S.C. § 2254 by Oscar Mejia-Rojo ("Petitioner") who is presently confined

at the Okeechobee Correctional Institution in Okeechobee, Florida (Doc. 1, filed January

7, 2013).   Petitioner, proceeding *pro se*, attacks convictions entered by the Twentieth

Judicial Circuit Court in Lee County, Florida for attempted first degree murder with a

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Rumsfeld v. Padilla*, 542 U.S. 426, 436 (2004)(citations omitted).   In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

[2] Disclaimer:   Documents filed in CM/ECF may contain hyperlinks to other documents or Web sites.   These hyperlinks are provided only for users' convenience. Users are cautioned that hyperlinked documents in CM/ECF are subject to PACER fees. By allowing hyperlinks to other Web sites, this court does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.   Likewise, the court has no agreements with any of these third parties or their Web sites.   The court accepts no responsibility for the availability or functionality of any hyperlink.   Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.

firearm, improper exhibition of a firearm, and aggravated assault. *Id.*   Respondent filed a response to the petition, and Petitioner filed a reply (Doc. 10; Doc. 16).

Upon due consideration of the pleadings and the state-court record, the Court concludes that Petitioner is not entitled to federal habeas relief.   Because the Court may resolve the petition on the basis of the record, an evidentiary hearing is not warranted. *See Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

## I.   Background

On July 8, 2008, a jury found Petitioner guilty of attempted first degree murder with a firearm, improper exhibition of a dangerous weapon, and two counts of aggravated assault (Ex. 1A at 109-113).[3]  He received life in prison with a twenty-five year minimum mandatory sentence (Ex. 1C at 214-225).   Petitioner's convictions and sentences were *per curiam* affirmed by Florida's Second District Court of Appeal ("DCA") (Ex. 2).

On March 5, 2011, Petitioner filed a post-conviction motion pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Rule 3.850 motion) (Ex. 3A).   After an evidentiary hearing (Ex. 3B at 133-189), the motion was denied. *Id.* at 191-198. Florida's Second DCA *per curiam* affirmed (Ex. 4).

## II.   Governing Legal Principles

### A.   The Antiterrorism Effective Death Penalty Act ("AEDPA")

Pursuant to the AEDPA, federal habeas relief may not be granted with respect to

---

[3] References to exhibits are to those filed by Respondent on December 16, 2013 (Doc. 15).   Reference to the trial transcript, contained in Exhibit 1 will be cited as (T. at __).

a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).   This standard is both mandatory and difficult to meet.   *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014).   A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference.   *Ferguson v. Culliver*, 527 F.3d 1144, 1146 (11th Cir. 2008).   Notably, a state court's violation of <u>state</u> law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issued its decision. *White*, 134 S. Ct. at 1702; *Carey v. Musladin*, 549 U.S. 70, 74 (2006) (citing *Williams v. Taylor*, 529 U.S. 362, 412 (2000)).   That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." *Marshall v. Rodgers*, 133 S. Ct. 1446, 1449 (2013) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. *White*, 134 S. Ct. at 1706 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009)).

Even if there is clearly established federal law on point, habeas relief is only

appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1).   A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams*, 529 U.S. at 406).   The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *White*, 134 S. Ct. at 1702 (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)).   Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." *Knowles*, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *Miller–El v. Cockrell*, 537 U.S.

322, 340 (2003) ("a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding") (dictum); *Burt v. Titlow*, 134 S. Ct. 10, 15-16 (2013) (same).

### B.    Ineffective Assistance of Counsel

In *Strickland v. Washington*, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984).   A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. *Id.*   This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt.   *Burt*, 134 S. Ct. at 13 (citing *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under *Strickland*'s performance prong is "reasonableness under prevailing professional norms." *Strickland*, 466 U.S. at 688-89.   In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance."   *Id.* at 689. Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" *Jones v. Campbell*, 436 F.3d 1285, 1293 (11th Cir. 2006).   A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690).

As to the prejudice prong of the *Strickland* standard, Petitioner's burden to demonstrate prejudice is high. *Wellington v. Moore*, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### C.    Exhaustion and Procedural Default

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law.   Specifically, the AEDPA provides, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
>
> > (A)   the applicant has exhausted the remedies available in the courts of the State; or
> >
> > (B)
> > > (i)     there is an absence of available State corrective process; or
> > >
> > > (ii)    circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1) (2012).

Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" *Duncan v. Henry*, 513 U.S.

364, 365 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275-76 (1971)).   The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.   *Snowden v. Singletary*, 135 F.3d 732 (11th Cir. 1998).   In addition, a federal habeas court is precluded from considering claims that are not exhausted but would clearly be barred if returned to state court. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims). Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. *Coleman*, 501 U.S. at 750.   If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. *Alderman v. Zant*, 22 F.3d 1541, 1549 (11th Cir. 1994).

Procedural default will be excused only in two narrow circumstances.   First, a petitioner may obtain federal review of a procedurally defaulted claim if he can show both "cause" for the default and actual "prejudice" resulting from the default.   "To establish cause for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." *Wright v. Hopper*, 169 F.3d 695, 703 (11th Cir. 1999) (internal quotation marks omitted).   To establish prejudice, a petitioner must show that there is at least a reasonable probability that the result of the proceeding would have been different. *Henderson v. Campbell*, 353 F.3d 880, 892 (11th Cir. 2003).

The second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]"  *Murray v. Carrier*, 477 U.S. 478, 479-80 (1986).   Actual innocence means factual innocence, not legal insufficiency.  *Bousley v. United States,* 523 U.S. 614, 623 (1998).   To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. *Schlup v. Delo*, 513 U.S. 298, 327 (1995).   In addition, "[t]o be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Schlup,* 513 U.S. at 324).

III.   **Analysis**

A.   **Claim One**

Petitioner argues that the trial court erred when it denied his motion for a judgment of acquittal (Doc. 1 at 5).   Specifically, he asserts that there was insufficient evidence presented at trial to show that he had the requisite intent to support a conviction for attempted first-degree murder. *Id.*   Petitioner also claims that there was insufficient evidence presented at trial to prove beyond a reasonable doubt that he was the actual shooter. *Id.*   Petitioner raised this claim on direct appeal, and it was denied by Florida's Second District Court of Appeal (Ex. 4).   Petitioner now claims entitlement to federal habeas relief because "[t]he lower court's decision was based on an unreasonable determination of the facts in light of the evidence presented at trial." (Doc. 1 at 5).   This Court does not agree.

The trial court record shows that defense counsel made a motion for a judgment of acquittal at the close of the state's case (T. at 468).   In support of the motion, defense

- 8 -

counsel asserted that, although Petitioner had made threats against the victim prior to the date of the shooting, nobody had testified as to the precise date on which those threats were made. *Id.* at 469.   Counsel also argued that the state had not proven aggravated assault against any of the remaining victims. *Id.* at 469-472.   In response, the prosecutor argued:

> We have an individual that was seen by the victim herself and by two sisters that were inside the house, pull a gun, put it to her head and pull the trigger and shoot it.
>
> We also have the testimony regarding element two, the premeditation that sometime prior to this shooting, he said to her that you will be killed or I will kill you at your grandmother's house; that is certainly evidence that the jury can consider with respect to premeditation.
>
> We also have, however, that the Court is aware that a premeditated design to kill means there's a conscious decision to kill and I would again call the Court's attention to the exact evidence or testimony that we have regarding the women that were in the room that the Defendant pulled the gun out, put it to the head of Juanita Faustino and then pulled the trigger; that is a conscious decision to complete that act and the law requires only time for reflection, so even if the Court does not feel that it should consider that previous threat, which is certainly signs of premeditation, that we have premeditation moments before the actual killing, that there was some time for reflection and there's no time required by law, just enough time for reflection and the pulling of the gun, putting it to her head and pulling the trigger is a sufficient time.

*Id.* at 473-74.   The motion for a judgment of acquittal was denied. *Id.* at 478.

A denial of a motion for a judgment of acquittal ordinarily presents an issue of state law.   It only presents a claim of constitutional dimension when the petitioner asserts that the evidence was insufficient to support the conviction, and as a result of the deficiency, there was a violation of due process of law.   Respondent argues that Petitioner advanced no argument at the state level indicating that he suffered a due process violation (Doc. 10

at 12-13).   Indeed, upon review of Petitioner's appellate brief, it is clear that he did not raise a Fourteenth Amendment due process claim in the state court proceedings (Ex. 2). Therefore, Petitioner did not fairly present a federal constitutional claim to the state courts. Petitioner has not shown cause and prejudice, nor has he shown that there would be a fundamental miscarriage of justice if Claim One is not addressed on its merits. Accordingly, Claim One is dismissed as unexhausted.

Even assuming *arguendo* that Claim One was exhausted in the state courts, Petitioner is not entitled to relief because his assertions are without merit. *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state.").   On federal habeas review, the question for this Court concerning the sufficiency of evidence in a state court proceeding is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).   Petitioner cannot meet this burden.

Under Florida law, premeditation is the essential element that distinguishes first-degree murder from second-degree murder. *See Green v. State*, 715 So. 2d 940, 943 (Fla. 1998).   Premeditation is defined as:

> more than a mere intent to kill; it is a fully formed conscious purpose to kill. This purpose to kill may be formed a moment before the act but must exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act.

*Wilson v. State*, 493 So. 2d 1019, 1021 (Fla. 1986), *receded from on other grounds by Evans v. State*, 838 So.2d 1090 (Fla. 2002).

At Petitioner's trial, the victim testified that after she ended her relationship with Petitioner, she sought to obtain child support for their son (T. at 259).   Petitioner came to the victim's home and asked about a paper he had received regarding his obligation to pay child support. *Id.* at 261.   When the victim refused to explain, Petitioner told her that he was going to kill her in front of her grandmother's house so that she would die in front of her family. *Id.* at 262.   Two days later, Petitioner came to the home of the victim's grandmother (where the victim was staying) and began arguing with her about the child support papers. *Id.* at 263.   Before the argument, he turned his son's car seat to face away from the room. *Id.* at 269.   He forced the victim to sit in a chair and pulled a handgun from his pocket. *Id.* at 267.   The victim was frightened and told Petitioner that she would not seek child support. *Id.*   Petitioner pushed the victim down in the chair and shot her in the head in front of the victim's children, her two sisters, and her three-year-old niece. *Id.* at 267-68, 269.

The victim's sister, Angelica Faustino ("Faustino"), testified that after Petitioner came to the house on the day of the shooting, he became angry with the victim and began hitting her (T. at 288).   He eventually pushed the victim down on a chair and shot her in the head. *Id.* at 289.   He told Faustino that she was going to watch her sister die and that she would be responsible for the victim's children. *Id.*   Another sister, Elizabeth Ibarra ("Ibarra"), testified that prior to the shooting, she overheard Petitioner tell the victim that he would kill her at her grandmother's house. *Id.* at 309.   She watched Petitioner shoot the victim in the head. *Id.*

Given Petitioner's prior threat to kill the victim and his actions of putting the gun to the victim's head and telling Faustino that she was going to watch her die, a rational trier of fact could have found beyond a reasonable doubt that Petitioner's shooting of the victim

was premeditated. *Jackson*, 443 U.S. at 319; *Pagan v. State*, 830 So. 2d 792 (Fla. 2002) (a defendant's statement of his intent to kill may be direct evidence of premeditation). Moreover, given that three witnesses testified that Petitioner shot the victim, a rational trier of fact could have concluded that Petitioner was the actual shooter.   Petitioner has not stated a due process violation based on insufficiency of the evidence.   In addition to being unexhausted, Claim One is denied on the merits.

### B.    Claim Two

Petitioner asserts that counsel was ineffective for failing to call Gerardo Gonzalez and Erick Mejia as defense witnesses at his trial (Doc. 1 at 7).   In his Rule 3.850 motion, Petitioner claimed that these witnesses would have provided testimony casting doubt on Petitioner's identity as the victim's shooter (Ex. 3A at 7-9).   Petitioner asserts that he notified counsel of these witnesses, but that "[c]ounsel failed to act on this information in a reasonable amount of time and the two witnesses returned to their native Mexico. Counsel then responded that they were out of reach of anything she could do." (Doc. 1 at 7).

Petitioner raised this claim in his Rule 3.850 motion, and after an evidentiary hearing, the post-conviction court denied the claim:

> At the evidentiary hearing, Defendant testified that Gerardo Gonzalez and Erick Mejia are his cousins.   When asked if he ever informed his attorneys that the alleged two witnesses should be called to testify on his behalf, Defendant replied that he gave information to Ms. Fletcher and Mr. Nicolosi regarding the alleged two witnesses and she informed him that "she couldn't do that."   When asked if Ms. Fletcher ever informed him why she couldn't do that, Defendant answered no and that she just told him that she refused to do that.   At the evidentiary hearing, the State called Ms. Mary Elizabeth Fletcher, Defendant's trial counsel, to provide testimony. When asked if Defendant ever requested her to investigate the alleged two witnesses, Ms. Fletcher stated that Defendant

never mentioned either of the two witnesses nor asked her to find them. Ms. Fletcher further testified that Defendant told her that he did not commit the crimes but that he could not provide a name, description, or any other information regarding the identity of the "real" shooter. At the evidentiary hearing, the State also called John Carlow Nicolosi who worked in the Public Defender's Office at the time and was assisting Ms. Fletcher with the case at bar. Mr. Nicolosi testified that he assisted Ms. Fletcher with the case because he is fluent in the Spanish language and assisted interpreting and from Defendant. Mr. Nicolosi testified that Defendant never mentioned the alleged two witnesses to either him or Ms. Fletcher during their meetings.

In light of the testimony given at the evidentiary hearing and Defendant's sworn statements to the Court at a *Nelson* hearing on the day before trial the Court finds Defendant's testimony given at the evidentiary hearing regarding Ground 1 lacks credibility. The record reflects that on June 30, 2008, one day prior to the start of trial, a *Nelson* hearing was held for the purpose of inquiring as to Defendant's specific reason or reasons for requesting that counsel be discharged. During Defendant's sworn testimony at the *Nelson* hearing, Defendant never stated that his attorney was ineffective for failing to investigate Gerardo Gonzalez and Erick Mejia as witnesses to testify at trial. Furthermore, Defendant never made any specific statements that he ever requested his trial counsel to investigate any witnesses or that his trial counsel refused to do anything he specifically asked of her. Accordingly, Defendant's Ground 1 is without merit.

(Ex. 3B at 195). The post-conviction court's adjudication of this claim was affirmed by Florida's Second District Court of Appeal (Ex. 4). A review of the record supports the state courts' denial of this claim.

At the evidentiary hearing on this issue, Petitioner testified that he told both of his defense attorneys that Gonazlez and Mejia needed to be called as witnesses on his behalf, but that he was met with refusal and no explanation (Ex. 3B at 150-51). In contrast, defense attorney Mary Fletcher ("Fletcher") testified that Petitioner had never mentioned Gonzalez or Mejia. *Id.* at 162. Likewise, defense attorney Giancarlo Nicolosi

("Nicolosi") testified that he never heard Petitioner mention Gonzalez or Mejia. *Id.* at 173. Moreover, prior to trial, a *Nelson* hearing was conducted on a motion in which Petitioner claimed that defense counsel was ineffective (Ex. 3A at 78).   At the hearing, Petitioner complained that Fletcher was generally unprepared, but when asked what Petitioner had asked her to do, he replied, "To talk to me about my case, to come to see me, to find out what was going on, but she never answered. . . . I cannot go to trial with her because every time she comes to see me or she (inaudible) apologize.   And she wants me to take a contract to avoid going to trial, and I cannot do that." *Id.* at 83.   Despite being provided an opportunity to explain counsel's alleged deficiencies in detail, Petitioner made no mention at the *Nelson* hearing that he had asked Fletcher to call Gonzalez and Mejia as defense witnesses or that she had refused to do so.

The post-conviction court recognized that Petitioner's testimony was in direct conflict with that of Fletcher and Nicolosi, but explicitly found counsels' testimony to be more credible (Ex. 3B at 195).   Questions of the credibility and demeanor of a witness are questions of fact.   *Freund v. Butterworth*, 165 F.3d 839, 862 (11th Cir. 1999).   The AEDPA affords a presumption of correctness to a factual determination made by a state court, and the habeas petitioner has the burden of overcoming the presumption of correctness by clear and convincing evidence.   28 U.S.C. § 2254(e).   Moreover, determining the credibility of a witness, "is the province and function of the state courts, not a federal court engaging in habeas review."   *Consalvo v. Sec'y for Dep't of Corr.*, 664 F.3d 842, 845 (11th Cir. 2011); *see also Gore v. Sec'y for Dep't of Corr.*, 492 F.3d 1273, 1300 (11th Cir. 2007) (recognizing that while reviewing court also gives a certain amount of deference to credibility determinations, that deference is heightened on habeas review) (citing *Rice v. Collins*, 546 U.S. 333, 341–42 (2006) ("[r]easonable minds reviewing the

record might disagree about the [witness'] credibility, but on habeas review that does not suffice to supersede the trial court's credibility determination")).   Federal habeas courts have "no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

Petitioner has not shown by clear and convincing evidence that the state court unreasonably determined that Petitioner's testimony was not credible.   Therefore, the post-conviction court reasonably concluded that Petitioner had not informed Fletcher or Nicolosi of these putative witnesses.   Counsel's performance is not deficient for failing to call a witness of whom he or she is unaware.   Petitioner has not satisfied the first prong of *Strickland*, and he is not entitled to federal habeas relief on Claim Two. 28 U.S.C. § 2254(d); *Strickland*, 466 U.S. at 697 (Because the petitioner bears the burden of satisfying both prongs of the test, the Court need not "address both components of the inquiry if the [petitioner] makes an insufficient showing on one.").

### C.    Claim Three

Petitioner asserts that counsel was ineffective for failing to prepare and present a defense (Doc. 1 at 8).   Specifically, he complains that no witnesses were questioned about Carlos Hernandez, the individual he asserts was the actual shooter. *Id.*   Petitioner also faults counsel for exploring the possibility of an accidental discharge defense during deposition of the state's witnesses and expresses dissatisfaction with Fletcher's closing argument. *Id.* at 9.

Petitioner raised this claim in his Rule 3.850 motion (Ex. 3A at 11-15).   However, the post-conviction court explained to Plaintiff that his claim, as currently presented, offered "no more than conclusory statements, does not point to any facts or law which

support the claim, [and does not] demonstrate a deficiency in performance that prejudiced the defense." *Id.* at 51.   The post-conviction dismissed this claim with leave to amend pursuant to *Spera v. State*, 971 So. 2d 754 (Fla. 2007). *Id.* at 52.   Petitioner failed to file an amended Rule 3.850 motion within the allotted time, and Claim Two was dismissed with a notice that Petitioner was foreclosed from reasserting the claim (Ex. 3B at 192; Ex. 3A at 125).   Petitioner did not appeal the post-conviction court's dismissal of this claim.

Respondent urges that Claim Three is unexhausted because, although Petitioner raised it in his Rule 3.850 motion, he did not reference the claim in his brief on appeal (Doc. 10 at 15).   Respondent is correct.   The "one complete round" exhaustion requirement set forth in *O'Sullivan v. Boerckel*, 526 U.S. 838 (1999) applies to post-conviction review as well as direct appeal; a prisoner must appeal the denial of post-conviction relief in order to properly exhaust state remedies. *Pope v. Rich*, 358 F.3d 852, 854 (11th Cir. 2004) ("*Boerckel* applies to the state collateral review process as well as the direct appeal process"); *LeCroy v. Sec'y, Dep't of Corr.*, 421 F.3d 1237, 1261 (11th Cir. 2005) (as Florida prisoner failed to properly exhaust claim on direct appeal or Rule 3.850 appeal, it was procedurally barred, citing *Coleman*).

Pursuant to Rule 9.141(b)(3) of the Florida Rules of Appellate Procedure, failure to fully brief and argue points on appeal after receiving an evidentiary hearing on a Rule 3.850 motion constitutes a waiver of those claims.   *See Leonard v. Wainwright*, 601 F.2d 807, 808 (5th Cir. 1979) (Florida prisoner must appeal denial of Rule 3.850 relief to exhaust remedies);[4] *Cortes v. Gladish*, 216 F. App'x 897, 899-900 (11th Cir. 2007)

---

[4] The Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.   *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

(recognizing that when a petitioner receives an evidentiary hearing on his Rule 3.850 motion, his failure to address issues in his appellate brief constitutes a waiver of those claims); *Coolen v. State*, 696 So. 2d 738, 742 n.2 (Fla. 1997) (failure to fully brief and argue points on appeal constitutes a waiver of these claims).

Petitioner does not contend that he specifically appealed the issues raised in Claim Three.   Nor has he shown cause for and actual prejudice from the default or presented new and reliable evidence to demonstrate that he is actually innocent of the underlying offense.   Rather, he argues only that the post-conviction court erred by not addressing this claim because "as written in Petitioner's 3.850 motion, [it] is far from insufficient." (Doc. 1 at 9).   Such an argument does not constitute cause for Petitioner's procedural default or, for that matter, a basis for habeas relief. *See Quince v. Crosby*, 360 F.3d 1259, 1261-62 (11th Cir. 2004) ("while habeas relief is available to address defects in a criminal defendant's conviction and sentence, an alleged defect in a collateral proceeding does not state a basis for habeas relief.").

Any further attempt at exhaustion in Florida courts would be futile because a second appeal would be untimely and procedurally barred under Florida law. *See* Fla. R. Crim. P. 3.850(k) (allowing 30 days for an appeal of a post-conviction court's rejection of a Rule 3.850 motion); *Parker v. Dugger*, 876 F.2d 1470 (11th Cir. 1989) (where dismissal to allow exhaustion of unexhausted claims would be futile due to state procedural bar, claims are considered procedurally barred in federal court), *rev'd on other grounds*, 498 U.S. 308 (1991).   Claims Three is dismissed as unexhausted and procedurally barred.

### D.   Claim Four

Petitioner asserts that the trial court erred by failing to conduct a proper hearing pursuant to *Nelson v. State*, 274 So. 2d 256 (Fla. 4th DCA 1973) (Doc. 1 at 10).

Specifically, he urges that Fletcher was untruthful at the *Nelson* hearing and that he had difficulty expressing his concerns to the trial court through his interpreter. *Id.* at 11.

Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction court dismissed the claim as procedurally barred because "[a] rule 3.850 motion cannot be used to review ordinary trial errors reviewable by means of direct appeal, and cannot be used to provide a second appeal or to provide an alternative to direct appeal." (Ex. 3A at 52). The dismissal was *per curiam* affirmed by Florida's Second District Court of Appeal (Ex. 4).

A petitioner requesting a federal court to issue a writ of habeas corpus must present his claims to the state courts in a procedurally correct manner. *Upshaw v. Singletary*, 70 F.3d 576, 579 (11th Cir. 1995).   The procedurally correct way to raise a claim of trial court error in the Florida state courts is by direct appeal. *See Sampson v. State*, 845 So.2d 271, 272 (Fla. 2d DCA 2003) (claims of trial court error should be raised on direct appeal); *Hampton v. State*, 886 So. 2d 319 (Fla. 4th DCA 2004) (a trial court's decision on a defendant's request to have counsel removed is reviewable upon direct appeal).

In Florida, a District Court of Appeal's *per curiam* affirmance of a circuit court's ruling explicitly based on procedural default "is a clear and express statement of its reliance on an independent and adequate state ground which bars consideration by the federal courts." *Harmon v. Barton*, 894 F.2d 1268, 1273 (11th Cir. 1990).   Because Petitioner failed to properly raise in appropriate state court proceedings a claim of trial court error based upon his allegedly unfair *Nelson* hearing, resulting in the application of a procedural bar by the state courts, the claim is likewise procedurally barred from review in this Court.   Petitioner has failed to demonstrate cause for not raising this claim in the

state courts or actual prejudice resulting from the error of which he complains.   Nor has

Petitioner presented new and reliable evidence to demonstrate that he is actually innocent

of the underlying offense.   Therefore, Petitioner cannot overcome the bar, and Claim

Four is dismissed as unexhausted and procedurally barred.

      **E.**    **Claim Five**

Petitioner asserts that he was offered a plea of twenty-five years in prison on the

morning of trial, but that Nicolosi[5] told him that the maximum sentence he faced if he

proceeded to trial was thirty years ([Doc. 1 at 12](#)).   Petitioner rejected the claim because

he mistakenly believed that it was only five years less than the maximum he faced if

convicted at trial. *Id.*   After trial, Petitioner was sentenced to life in prison (Ex. 1C at 214-

225).

Petitioner raised this claim in his Rule 3.850 motion, and an evidentiary hearing

was held on the claim (Ex. 3B).   After the hearing, the post-conviction court denied the

claim:

> At the evidentiary hearing, Defendant testified that Ms.
> Fletcher told him that the maximum sentence he faced if
> convicted at trial was thirty years imprisonment.   He further
> testified that [had he] known that there was a possibility of
> receiving a sentence of life imprisonment, then he would have
> accepted the State's plea offer of twenty-five years.   At the
> evidentiary hearing, Ms. Fletcher testified that the State's only
> plea offer was for a sentence of life imprisonment and that she
> informed Defendant that the maximum sentence he faced was
> life imprisonment.   At the evidentiary hearing, Mr. Nicolosi
> testified that neither he nor Ms. Fletcher ever told Defendant
> that he faced a maximum sentence of thirty years in prison.
> Mr. Nicolosi testified that they told Defendant that they were
> trying to negotiate a plea with the State for a sentence of
> twenty-five years in prison but that the State would not go

---

[5] At the evidentiary hearing, Petitioner testified that it was Fletcher, not Nicolosi,
who told him that he faced a maximum of thirty years in prison (Ex. 3B at 154).

> down from its offer of life imprisonment.   At the conclusion of
> the evidentiary hearing, counsel for Defendant conceded that
> Defendant did not meet his burden of proof as required by
> *Strickland* as it relates to Ground 4.   Accordingly, the Court
> will consider counsel for Defendant's concession as it relates
> to Ground 4 as being voluntarily withdrawn with prejudice.   In
> any event, based on the testimony offered at the evidentiary
> hearing, the Court finds Ground 4 to be without merit.

*Id.* at 196-197.   The post-conviction court's rejection of this claim was *per curiam* affirmed

by Florida's Second District Court of Appeal (Ex. 4).   The post-conviction court's factual

findings are supported by the record.

At the evidentiary hearing on this claim, Petitioner testified that before the week of

trial, Fletcher tried very hard to get him to accept a twenty-five year offer from the state

(Ex. 3B at 154).   He said that Fletcher told him that the maximum he would receive if

convicted was thirty years in prison.   *Id.*   He told the post-conviction court that, had he

realized that the maximum was life, he would have accepted the offer.   *Id.* at 157.   In

contrast, Fletcher testified that she told Petitioner that the maximum sentence he faced

was life in prison.   *Id.* at 163.   She testified that she had tried to negotiate something with

the prosecutor, but the only offer she ever received was life in prison.   *Id.* at 164.   Nicolosi

also testified that Petitioner was told the maximum sentence he faced was life in prison.

*Id.* at 173.   Nicolosi said that he discussed a possible twenty-five year sentence with

Petitioner in hopes that he could negotiate such with the prosecutor, but that the state

attorney never agreed to anything but a life sentence.   *Id.* at 175-176.

By concluding that this claim lacked merit, the post-conviction court implicitly found

that counsels' versions of events were more reliable than Petitioner's.   *See Marshall*, 459

U.S. 422, 433 (1983) (applying the presumption of correctness to implicit finding against

the defendant's credibility, where that finding was necessarily part of the court's rejection

of the defendant's claim).   Petitioner has offered no clear and convincing evidence to rebut the state court's credibility finding.   Moreover, even had counsel misadvised Petitioner about his maximum sentence, and even had Petitioner misunderstood Nicolosi's discussions regarding a possible twenty-five year sentence, Petitioner has not shown that an offer was, in fact, made by the state.   Accordingly, Petitioner cannot demonstrate prejudice from any alleged mis-advice or misunderstanding.

Petitioner has failed to satisfy the second prong of *Strickland* and is denied pursuant to 28 U.S.C. § 2254(d).

F.   **Claim Six**

Petitioner asserts that he was denied a fair trial, due process, and equal protection of the law from the cumulative effect of counsel's ineffectiveness (Doc. 1 at 14).   This Court need not determine whether, under the current state of Supreme Court precedent, cumulative error claims can ever succeed in showing that the state court's adjudication on the merits was contrary to or an unreasonable application of clearly established federal law.   Petitioner has not shown an error of constitutional dimension with respect to any federal habeas claim. Therefore, he cannot show that the cumulative effect of the alleged errors deprived him of fundamental fairness in the state criminal proceedings. *See Morris v. Sec 'y Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (refusing to decide whether post-AEDPA claims of cumulative error may ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law, but holding that petitioner's claim of cumulative error was without merit because none of his individual claims of error or prejudice had any merit); *Forrest v. Fla. Dep't of Corr.*, 342 F. App'x 560, 565 (11th Cir. 2009) (noting absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of

counsel, but holding that the petitioner's cumulative error argument lacked merit because he did not establish prejudice or the collective effect of counsel's error on the trial). Petitioner is not entitled to federal habeas relief.

Any of Petitioner's allegations not specifically addressed herein have been found to be without merit.

## IV.   Certificate of Appealability[6]

Petitioner is not entitled to a certificate of appealability.   A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1).   Rather, a district court must first issue a certificate of appealability ("COA").   "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, Petitioner must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller–El*, 537 U.S. at 335–36.   Petitioner has not made the requisite showing in these circumstances.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

Accordingly, it is hereby **ORDERED AND ADJUDGED** as follows:

---

[6] Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." *Id.*   As this Court has determined that Petitioner is not entitled to habeas corpus relief, it must now consider whether Petitioner is entitled to a certificate of appealability.

1.      The Florida Attorney General is **DISMISSED** as a named Respondent.

2.      Claims One, Three, and Four of the 28 U.S.C. § 2254 petition for habeas corpus relief filed by Oscar Mejia-Rojo (Doc. 1) are **DISMISSED**; alternatively, Claim One is **DENIED**; the remaining claims are **DENIED;** and this case is dismissed with prejudice.

3.      Petitioner is **DENIED** a certificate of appealability.

4.      The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this 21st day of May, 2015.

SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Oscar Mejia-Rojo
Counsel of Record